UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Curtis Pastore and Burn Kickboxing, Inc.,

          Plaintiffs,

    v.                                         **COMPLAINT**

FC Online Marketing, Inc., Michael Parrella,
Parrella Consulting Inc., I Love Kickboxing, Inc.        Index No.  5:16-CV-0358 (MAD/DEP)
and Opes Vita, Inc. d/b/a RainMaker Software,

          Defendants.                      **JURY TRIAL DEMANDED**

---

Plaintiffs Curtis Pastore and Burn Kickboxing, Inc., by and through their attorneys Melvin & Melvin, PLLC, complaining of the Defendants FC Online Marketing, Inc., Michael Parrella, Parrella Consulting, Inc., I Love Kickboxing, Inc., and Opes Vita, Inc. d/b/a RainMaker Software, hereby allege as follows:

## THE PARTIES

1.     Plaintiff Curtis Pastore (hereinafter, "**Pastore**") currently own and operates Burn Kickboxing, Inc., with its principal place of business located 7575 Buckley Rd, North Syracuse, NY 13212 (hereinafter, "**Burn Kickboxing**"). Pastore is a resident of the Village of Chittenango, Madison County, State of New York.

2.     Defendant Michael Parrella ("**Parrella**") is a well-known personality in the martial arts industry, and owns several business entities that provide marketing and sales services to business owners in the business of karate, mixed martial arts and kickboxing. Upon information and belief, Parrella is a resident of Nassau County, State of New York.

3.    Defendants FC Online Marketing, Inc., Parrella Consulting Inc., and I Love Kickboxing, Inc. are all businesses owned and operated by Parrella, and are all located at 3601 Hempstead Turnpike, Levittown, Nassau County, State of New York.  Defendants FC Online Marketing, Inc., Parrella Consulting Inc., and I Love Kickboxing, Inc. are sometimes referred to herein as the **"Parrella Defendants"**.

4.    Defendant Opes Vita, Inc. d/b/a Rainmaker Software (hereinafter, **"Rainmaker"**) is a Texas corporation with its principal place of business located at 2112 Crestwood Trail, Mansfield, Tarrant County, State of Texas.

<u>JURISDICTION AND VENUE</u>

4.    This court is the proper venue for this action by virtue of being the judicial district where a substantial part of the events giving rise to the claim occurred, and where the property that is the subject of the action is situated, pursuant to 28 U.S.C. § 1391 (b)(2).

5.    In addition, venue is appropriate in this judicial district with respect to claims under New York State law, pursuant to CPLR § 507, since this action "affects the possession, use and enjoyment" of real property of the Plaintiffs located within a county of this judicial district, and pursuant to CPLR § 503(a), based on the residence of the Plaintiff.

6.    This court may assert personal jurisdiction over Defendant Michael Parrella and the other Parrella Defendants because these defendants are all residents of, and do business extensively within the State of New York.

7.    This court may assert personal jurisdiction over Defendant Rainmaker on the basis of Rainmaker providing services to the plaintiffs, entering into a contract and performing the contract within the State of New York.  Furthermore, Rainmaker has taken actions in breach

of their service contract with plaintiff Burn Kickboxing, Inc., which has caused harm to plaintiffs

within the State of New York.

8.      This court has subject matter jurisdiction because the plaintiffs seek a declaratory

judgment pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.* to declare the trade dress claims

of Parrella and the Parrella Defendants as unqualified for protection under the trademark laws of

the United States for lacking secondary meaning with the public sufficient to give rise to a claim

of brand identity attributable to the general interior design of their kickboxing studios, in the

absence of the use of any registered trademarks or logos belonging to Parrella by the plaintiffs.

Federal courts are the courts of original jurisdiction under the Lanham Act.  15 U.S.C. § 1121.

9.      This court also has subject matter jurisdiction relating to claims under the Lanham

Act by virtue of the provisions of 28 U.S.C. § 1331, which confers upon federal district courts

jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United

States."

9.      This court has supplemental jurisdiction over the various New York State Law

claims, pursuant to 28 U.S.C. § 1367.

## STATEMENT OF FACTS

10.     Plaintiff Curtis Pastore has subscribed to various marketing services of the

Parrella Defendants in connection with his prior ownership of a karate studio called Five Star

Martial Arts, which is not a party to this action.

11.     Among those marketing and business consulting services, Pastore paid for and

attended lectures, conferences, subscribed to conference calls and business consulting advice

offered by Parrella and the Parrella Defendants, including but not limited to Parrella's Master

Arts Business Accelerator and other Martial Arts marketing and business services.

12.     At one of these lectures, Parrella gave the attendees generalized advice about the design of martial arts studios, their décor and the positive effect this has on client retention and business growth. This was a paid seminar costing $497 to register and was not limited solely to franchisees of Parrella's kickboxing business, I Love Kickboxing Inc. (hereinafter, "ILKB"), or business advice that was specific to those franchisees. Parrella has a substantial business consulting practice targeted toward people who own martial arts studios of various types and offers a wide range of products and services, including a subscription business blog, online videos, paid conference calls, email marketing strategies, development of mailing lists and advice for growing your business.

13.     Parrella delivers these services through the defendant business entities, Parrella Consulting Inc., which sells the lectures and marketing advice, and FC Online Marketing Inc., which builds web sites and implements web based marketing for customers. Please note that Parrella Consulting, Inc. and FC Online Marketing, Inc. do **not** provide services only for ILKB franchisees. The business consulting, advice and services are targeted to the wider martial arts industry.

14.     Included in one of the seminars Pastore subscribed to was a discussion of how to design and decorate your studio, to create the best impression on your students and improve your overall customer satisfaction. Much of the discussion was generic; about what types of lighting looked good, how to design seating areas and your front desk, etc. Pastore paid the price for this seminar and listened to Parrella's advice. Parrella would take questions from participants on the conference call. Sometimes Parrella would couch his advice in phrases like "this is how we do it", or "we find this to be very successful", but at no time did he say that the information being provided in this paid seminar was limited to use only by those who were franchisees of ILKB.

15.     In approximately September 2015, Pastore began designing a kickboxing studio, adjacent to the karate studio that he operated with my then-partner, Paul Napoli, Five Star Martial Arts, Inc. At first, Pastore and Napoli were going to develop the kickboxing business, but then Napoli decided that he preferred to stay with the karate business, and Pastore would launch the new kickboxing business, Burn Kickboxing, by himself. As he designed the new studio, he utilized some of the design ideas that he had paid to hear in the Parrella lecture, such as type of lighting, ideas about seating in the waiting room area and a few other tips. However, Burn Kickboxing's studio had many features that Parrella's studio design lacks, as outlined in Pastore's affidavit at paragraph 17.

16.     Pastore originally began taking pre-registrations for Burn Kickboxing online in November 2015, using the Defendants software and services. Burn Kickboxing opened for business on January 4, 2016.

17.     Pastore spent approximately $150,000 in designing, decorating and purchasing equipment for Burn Kickboxing from September to December 2015, using the proceeds of an SBA loan.

18.     On December 2, 2015, Pastore was contacted by Nick Dougherty, an employee of the Parrella Defendants, who told him via Facebook that Dougherty saw the pictures of the Burn Kickboxing studio and was concerned that they might infringe the trade dress rights of I Love Kickboxing, Inc. or the limited liability company of the same name (both entities hereinafter jointly and severally referred to as "ILKB").

19.     Pastore exchanged a series of email notes with Nick Dougherty and advised him that he had not intended to copy the ILKB look and feel, although Pastore had followed some of the recommendations about décor that Parrella had provided to his listeners on a conference call

that is part of his Martial Arts Nucleus marketing program, for which Parrella charges customers like Pastore $497/month.

20.     Pastore had paid for Parrella's advice about design, layout and décor of a martial arts or kickboxing studio. In these notes exhanged with Nick Dougherty, Pastore discussed how he used the full range of Parrella's marketing techniques, including email lead generation, advertisements and strategies. In his note, Dougherty said he had seen people get sued for violations of Parrella's ILKB trade dress and lost, and suggested that Pastore speak with Parrella.

21.     As a result of this Facebook email exchange with Nick Dougherty, Pastore decided to message Michael Parrella directly on December 2, 2015 and told him all of his services that he subscribed to, and described his concept ("Burn Kickboxing") and color scheme to support that (red and orange to represent flames, for instance). Pastore discussed with Parrella the advice that he had given in his subscription broadcast about build-out of a studio, and then Pastore described areas in which his studio design is different than ILKB. These included mirrors in the exercise rooms, which Parrella does not use for ILKB, including custom-made lighting sconces that shoot light up the wall to give a flame effect, orange painted piping overhead further reinforcing the flame/"burn" concept, iPad kiosk registration and check-in, attendance stations, privacy changing rooms and wooden lockers, none of which Parrella employs in his build-outs.

22.     Parrella's response was the following: "Curtis, I can't really get into anything this minute, but I did not recommend pendant lights, brick paneling or build in couches. That's what I do. I have shown them as examples only. I will address these things with you tomorrow. I'm sure we will get it all worked out."

23.    The next day, Plaintiff Curtis Pastore was contacted by Nicole Semidei, who is a "compliance officer" for the Parrella Defendants, or some of them. Nicole provided a list of items that needed to be "complied with" in order to avoid a claim of trade dress infringement. Pastore made all of these requested changes, reconfiguring custom-built seating benches, changing upholstery, repainting the exercise studio, changing counter tops and made other cosmetic changes that cost an additional $12,000 over the original build-out costs – and Pastore had not yet opened for business as Burn Kickboxing.

24.    Pastore sent Nicole Semidei pictures of the redesign on December 4, 2015. Nicole sent the following notes on December 7, 2015 after viewing his photos of the changes:

"NICOLE: Hey Curtis. Gray definitely works. Changing the color of the benches is a must. I am still waiting for (sic) to confirm if we need to remove the boxes (from bench seating). … Curtis, Michael has confirmed that the boxed in benches is something that ILKB initially designed that type of bench. We will need the boxes removed.
CURTIS: "I will remove the side flanks (from the bench seating). They are painting the gray now, and I have ordered new seating with no red in them. Is there anything else? Or are we good to go. Got a lot going on and really want to move forward from this."
NICOLE: "That should do it."

25.    Pastore heard nothing more from them and opened for business with Burn Kickboxing on January 4, 2016.

26.    On January 12, 2016, Defendant FC Online Marketing, Inc. shut down plaintiff's web site, without notice and without cause. Pastore remained current in his payments for their services.

27.    Also on January 12, 2016, Pastore received further Facebook messages from Nicole Semidei, who had reviewed online videos he had posted of his studio, and claimed that changes they had discussed had not been made. She claimed that the gray paint was still tan, and

she accused Pastore of intentionally trying to copy the IKLB trade dress.  Pastore made further

efforts to arrange a Skype call with Nicole Semidei to provide a virtual "walk through" of the

changes he had made to my facility and to demonstrate to her that his design was significantly

different from ILKB.  She made several excuses why she couldn't do it, and avoided further

contact with Pastore after that.

28.     As a result, plaintiff made arrangements with another company to host a new web

site for Burn Kickboxin.  However, Pastore was no longer able to access his online customer

registration pages, which were under the control of Rainmaker and the Parrella Defendants.  The

online marketing tools that plaintiff subscribed to had been discontinued, lead generation had

been interrupted and plaintiff could no longer track or receive payments by his customers.

29.     Pastore had his attorney send a cease and desist letter to Parrella and his

companies on January 22, 2016, because they had not only shut down online services for Burn

Kickboxing, but they had also turned off all online services for Pastore's former partner, Paul

Napoli and Five Star Martial Arts, even though he had nothing to do with the dispute, and they

have always remained current in the payment of their bills.

30.     After plaintiff's attorney sent the letter, the Parrella Defendants turned back on all

the services for Five Star Martial Arts, but not for Burn Kickboxing.  That was fine, since

Pasotre no longer wanted to do business with the Parrella Defendants.  Things remained quiet for

almost two months, as plaintiff's new web vendor worked on his new web site for Burn

Kickboxing.

31.     Then, on March 18, 2016, Michael Andreasen of Rainmaker called Pastore at

about 5 PM (on a Friday) and said to him:

> "We understand you are in litigation with I Love Kickboxing, so we have to suspend your
> services immediately because we are in partnership with ILKB.  We will send you all

your customer data and also issue you a refund.  But if you get it settled with them, we'll be happy to turn your services back on."

32.     This was a crippling blow to plaintiff's business because Rainmaker's Customer Relationship Management ("CRM") software is the financial backbone of the business.  This is how they sign up new customers.  This is how they pay their monthly dues.  This is how customers check in for sessions.  It's plaintiffs' main source of communication with their customers, since you can use the Rainmaker system to send them custom emails, or automatic email responses when they take certain actions at the web site.  Plaintiffs also use Rainmaker for all employee time keeping, so they can clock in and get paid.  This has literally crippled plaintiffs' business, and was done intentionally, at the request of Parrella and the Parrella Defendants, who presumably are one of the largest referral sources of Rainmaker.

33.     So Parrella used his influence in the industry to interfere with plaintiffs' contractual relationship with a third party software vendor.  Plaintiffs remain concerned that Parrella will do likewise with other suppliers of the martial arts industry, such as equipment suppliers and other service providers.

34.     This interruption in service has cost plaintiffs substantially.  The combination of Defendant FC Online Marketing, Inc. and Rainmaker provided them with lead generation, search engine optimization services, online marketing presence and all the customer relationship management and payment tools described above.  Although Burn Kickboxing is just being launched, plaintiffs had substantial experience of the benefits of the marketing programs and CRM software offered by the Parrella Defendants and Rainmaker, respectively, since they had used their services for several years when Pastore was still a partner in Five Star Martial Arts.  Loss projections included in this Complaint and the accompanying affidavit from Curtis Pastore

are based in large part on this past history of use of the defendants' services for his former business.

35.    Pastore went two months without a web site after FC Online Marketing, Inc. shut down his site on January 12, 2016 without cause, and after he had spent at least $12,000 (plus attorneys' fees) to fix and address all their "concerns" about his studio design, and he was current with my payments for their various services at the time they were shut off without warning.

36.    Typically, the FC Online Marketing/Rainmaker program had generated 10-15 leads per day at plaintiffs' former web site (for similar services advertised in the same location, along with two months' usage during the pre-registration process before Burn Kickboxing officially opened). Approximately 50% of those leads would register for trial classes, and about half of those people would sign up for monthly memberships. Of those who subscribe for memberships, roughly 75% sign up for the 20 month option, since plaintiffs offer lower rates per month with longer dues subscriptions, and the customer is not required to pay the full amount up front. Plaintiffs simply debit their credit card via EFT once per month. Plaintiffs also offer 7 and 12 month membership, at higher monthly rates. Those make up the remaining 25% of their members' payment plans.

37.    This works out to roughly 17 people on average per month who would otherwise have signed up for memberships, most of whom would have selected the 20 month option, based on our past operating history with Five Star, and the pre-registrations with Burn Kickboxing. The 20 month membership costs a total of $2,380. Twelve month memberships cost $1,620 and 7 month memberships cost $1,043 in total. These damages recur every month we are without these marketing and CRM services.

38.     In addition to lost membership due to the interference by FC Online Marketing, Inc. and Rainmaker with plaintiffs' marketing and sales efforts, Pastore has been damaged by the additional cost of seeking out new vendors to replace these services, as well as "rush" fees that he have been forced to pay to expedite a rapid transition to new service providers.

39.     Also at precisely this time that Rainmaker made my business "go dark" as described above, Pastore's wife was giving birth to their first child, and some minor complications occurred during his daughter's birth. All the pressure and stress of this attempt by the Defendants to destroy his new business has placed his family under tremendous emotional and financial pressure.

40.     In addition, Rainmaker refunded plaintiffs' $197 fee for that month's services and emailed to Pastore an Excel spreadsheet with all of his customer data in it. As plaintiff reviewed the customer registration information, he noticed a substantial number of false registrations included in their data from the last week or so. It appears to me that "someone" – either FC Online Marketing, Inc., one of the other Parrella Defendants, or perhaps even Rainmaker – was "testing" plaintiff's new web site, and perhaps trying to hack it, to continue to hinder plaintiffs' ability to reopen for business, advertise his business online, and process customer transactions.

## AS AND FOR A FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT ON DEFENDANTS' TRADE DRESS CLAIMS

41.     Plaintiffs repeat and restate the allegations contained in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     The elements that the Parrella Defendants consider to be "trade dress" are generic and have no secondary meaning at all among consumers, if viewed in the absence of the ILKB registered trademarks, logos and insignia, which plaintiff does not make use of, or copy in any fashion.

43.    The Parrella Defendants' trade dress claims consist of styles of lighting that can be bought in any lighting store, color combinations of paint on the walls that plaintiff does not copy, and bench seating that Parrella claims as proprietary and signifying of his brand because he paid a carpenter to install custom seating at several of his studios.  These individual features do not signify brand to the public; they are generic design elements that can be found in thousands of exercise and fitness facilities across the United States.  As such, they lack "secondary meaning" as defined under the Lanham Act and fail to qualify for federal protection of trade dress.

## AS AND FOR A SECOND CAUSE OF ACTION – BREACH OF CONTRACT

44.    Plaintiffs repeat and restate the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

45.    The following elements must be established on a breach of contract claim: (1) a valid and enforceable contract; (2) the plaintiff's performance of the contract; (3) breach by the defendant; and (4) damages. See *Noise in Attic Prods., Inc. v London Records*, 10 AD3d 303, 307 (1st Dep't 2004); *Furia v Furia*, 116 AD2d 694, 695 (2d Dep't 1986).

46.    Plaintiff Burn Kickboxing, Inc. had a valid agreement with Defendant FC Online Marketing, Inc. to host its web site.  Burn Kickboxing paid its monthly fees regularly and on time.  However, FC Online Marketing, Inc. "turned off" Burn Kickboxing's web site without cause, warning or notice on January 12, 2016; only eight days after I had opened for business, in violation of the terms and conditions of our services contract.

47.    Defendant FC Online Marketing, Inc. did this as an intentional act.  Plaintiffs had complied with their requests to redesign their studio, spending roughly $12,000 to do so, after

having spent $150,000 outfitting and designing the space – and Burn Kickboxing had only just opened for business!

48.     FC Online Marketing, Inc. and Parrella intentionally breached plaintiffs' services contract to host the Burn Kickboxing web site to "punish" Pastore for using what Parrella unreasonably considered his "trade dress", despite written assurances to Pastore from Parrella's employee that the changes Pastore made were sufficient to address their concerns, and despite the fact that Pastore paid Parrella through my subscriptions with Parrella Consulting, Inc. for his advice about overall studio design concepts.

54.     For the foregoing reasons, Parrella, FC Online Marketing, Inc. and Parrella Consulting, Inc. have committed breach of contract, and plaintiffs Burn Kickboxing, Inc. and Curtis Pastore demand judgment for damages caused by this unwarranted services interruption just as Pastore was opening his new business.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT BY RAINMAKER

55.     Plaintiffs repeat and restate the allegations contained in paragraphs 1 through 54 as if fully set forth herein.

56.     At the request of Parrella, Rainmaker ceased providing access to Plaintiff Burn Kickboxing's Customer Relationship Management ("CRM") software without warning or notice on March 18, 2016, in violation of the terms of our services contract.

57.     Rainmaker contacted Pastore and advised him that they were shutting off his access to this essential software package which managed Burn Kickboxing's customer payments and registrations, check-in and timekeeping for his trainers. Burn Kickboxing's terms and conditions page are contained within Rainmaker, along with all the essential payment and customer information essential to the operation of its business.

58.     The reason that Rainmaker gave for cutting off Burn Kickboxing's CRM software and services was that "Burn Kickboxing was in litigation with Parrella". Rainmaker further advised Burn Kickboxing and Pastore that they would resume services if the dispute with Parrella could be worked out. Rainmaker provided a refund of fees paid, and a copy of Burn Kickboxing's customer information in an Excel spreadsheet. But still, Burn Kickboxing had no access to payment processing, new customer registrations and time entry.

59.     Upon information and belief, Rainmaker stopped providing its services to Burn Kickboxing at the direction of Michael Parrella, who refers substantial business to Rainmaker for their CRM software.

60.     For the foregoing reasons, Rainmaker has committed an intentional breach of contract which has caused substantial damages to Burn Kickboxing in terms of lost registrations, lost income and the cost of conversion of its business to a new CRM software vendor in an amount to be determined.

## AS AND FOR A FOURTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH
## EXISTING BUSINESS RELATIONSHIPS

61.     Plaintiffs repeat and restate the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

62.     Upon information and belief, Michael Parrella tortuously interfered with the provision of business services to plaintiffs under valid existing contracts by both his company FC Online Marketing Inc. and by third party CRM software provider Rainmaker.

63.     Both FC Online Marketing Inc. and Rainmaker ceased providing services to plaintiffs because of Parrella's personal interference with plaintiffs' contractual relationships.

64.    Burn Kickboxing has been substantially harmed by Parrella's actions and the

sudden interruption of services by these essential service providers to plaintiffs' business.

65.    Parrella's acts were done with malice, with an intention to harm plaintiffs'

business and put Pastore out of business.  This has caused Pastore substantial emotional distress,

in addition to the financial damages and lost business he has suffered as a result of his

unwarranted interference with my existing business relationships.  Pastore and his wife

welcomed the birth of his daughter the day before all the services were turned off for his

business by Rainmaker.  Pastore's daughter's birth had some complications, requiring an

extended hospital stay, at precisely the same time that his business completely "went dark" and

could not process payments or register new customers.  This caused him and his wife substantial

emotion stress at what should be a joyous time in their lives.  Plaintiffs hereby request that they

be awarded punitive damages for the emotional distress caused by Parrella's intentional

interference with Pastore's existing business relationships in an amount to be determined by the

court.

## CONCLUSION

**WHEREFORE**, plaintiffs Burn Kickboxing Inc. and Curtis Pastore respectfully request

from this court judgment as follows:

1.    An Order declaring the trade dress claims of the Parrella Defendants to be invalid

for being generic and lacking "secondary meaning" to the public as a brand indicator in the

absence of the use of their registered logos and trademarks.

2,    Granting plaintiffs damages against the Parrella Defendants and Rainmaker in an

amount to be determined by this court for breach of contract.

3.      Granting plaintiffs damages for intentional interference with existing business relationships by Parrella in an amount to be determined by this court.

4.      Granting plaintiff punitive damages against the defendants for intentional business tort and for the intentional infliction of emotional distress in an amount to be determined by this court.

5.      An Order prohibiting the Defendants from taking further actions against the web site, online marketing and other business operations of Burn Kickboxing to attempt to harm, hack, disable or disparage the Burn Kickboxing business or Curtis Pastore, individually.

6.      Awarding the plaintiffs attorneys' fees in connection with the intentional business tort and for the intentional infliction of emotional distress caused by Michael Parrella and the other defendants.

7.      Plaintiffs  respectfully request a trebling of damages for defendant's willful and malicious conduct, along with the award of costs and attorneys' fees in bringing this action, together with the costs and disbursements of this action and such other and further relief, which this Court may deem just and proper.


                                        Respectfully submitted,


Dated:  March 29, 2016

                                        _____
                                        Matthew Van Ryn, Esq.
                                        MELVIN & MELVIN, PLLC
                                        *Attorneys for Plaintiffs Burn Kickboxing, Inc.*
                                        *and Curtis Pastore*
                                        217 South Salina Street, Seventh Floor
                                        Syracuse, New York 13202
                                        Telephone (315) 422-1311